SOCIALIST WORKERS PARTY; Leroy Watson; Louise Pittell; and Dean Peoples, Plaintiffs-Appellants,

v.

SECRETARY OF STATE OF the State of WASHINGTON, Ralph Munro, Defendant-Appellee.

No. 84–3806.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 3, 1984.

Decided July 17, 1985.

Daniel H. Smith, Seattle, Wash., for plaintiffs-appellants.

James Johnson, SAAG Sp. Asst. Atty. Gen., Olympia, Wash., for defendant-appellee.

Before BROWNING, Chief Judge, GOODWIN and SKOPIL, Circuit Judges.

JAMES R. BROWNING, Chief Judge:

Plaintiffs filed suit challenging the constitutionality of Wash.Rev.Code section 29.-18.110 (West Supp.1985) on the ground that it effectively barred minor parties from participating in general elections for state-

wide office and thus deprived these parties, their members, and the voters of Washington of rights protected by the first and fourteenth amendments. Both parties filed motions for summary judgment. The district court gave judgment for defendants. Plaintiffs appealed.

## I.

Prior to 1977, minor political parties did not participate in Washington's primary election. Each minor party nominated its candidates for public office at a convention, attended by at least one hundred registered voters. Wash.Rev.Code §§ 29.24.020 and 29.24.030 (1965) (amended 1977). The minor party nominee was placed on the ballot for the general election upon the filing of a certificate signed by at least one hundred registered voters present at the party's convention. Wash.Rev.Code §§ 29.24.040 and 29.30.100 (1965) (amended 1977).

Washington amended its election law in 1977. The convention-certificate requirement for nomination of a minor party candidate is retained, but an additional condition is imposed upon minor party access to the general election ballot. The name of the nominee selected by a minor party by the convention-certification procedure is no longer placed directly on the general election ballot but instead is placed on the ballot for the state's primary election. Wash.Rev.Code § 29.18.020 (West Supp. 1985). The primary ballot also includes the names of those persons who have declared their candidacy for nomination by the major parties. The nominee of a minor party or a candidate for nomination of a major party is placed on the general election ballot only if he receives 1% of the total primary vote for all candidates for the particular office, and a plurality of the votes cast for candidates of his party for that office. Wash.Rev.Code § 29.18.110. As a practical matter the first condition affects only minor parties because the vote cast for the two major parties has consistently far exceeded 1% of the total vote. The second condition affects only major party candidates because a minor party is permitted to place on the primary ballot only the single nominee already selected by the conven-tion-certificate process. Wash.Rev.Code §§ 29.18.020, 29.24.020.

## II.

The Supreme Court recently restated the analytic process to be followed in resolving first and fourteenth amendment challenges to state election laws:

> [A court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Anderson v. Celebrezze,* 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983).

We turn first to the (1) character and (2) magnitude of the injury to the first and fourteenth amendment rights plaintiffs seek to vindicate.

Plaintiffs contend the primary vote requirement imposed by Wash.Rev.Code section 29.18.110 has substantially barred minor party candidates for statewide offices from the ballot for Washington's general elections since 1977.

Statutes restricting access to the ballot by a party's candidates limit both "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes,* 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968). The injury to these fundamental rights is particularly serious where, as here, the burden "falls unequally on new or small political parties," for "[b]y limiting the opportunities of independent-minded

voters to associate in the electoral arena to enhance their political effectiveness as a group, such restrictions threaten to reduce diversity and competition in the marketplace of ideas." *Anderson,* 460 U.S. at 793–94, 103 S.Ct. at 1572–73. *See also Clements v. Fashing,* 457 U.S. 957, 964–65, 102 S.Ct. 2836, 2844–45, 73 L.Ed.2d 508 (1982), and cases cited.

It is evident that the infringement upon constitutional rights involved in this case is serious in character. The magnitude of the restraint—the extent to which it has inhibited minor party access to the ballot—is dramatic.

Prior to 1977, candidates of minor parties qualified for the general election ballot in contests for statewide office with regularity. At least one minor party appeared on the general election ballot in every Washington gubernatorial election from 1896 to 1976 except 1952. Two or more minor party candidates qualified in all but two of these elections. Forty minor party candidates appeared on the general election ballot for statewide offices in the five general elections between 1968 and 1976.

The 1977 amendment to Wash.Rev.Code section 29.18.110 worked a striking change. According to the affidavit of Washington's Supervisor of Elections, since 1977 minor parties "have not been successful at qualifying candidates for the state general election ballot for statewide offices." Although one or more minor parties nominated candidates in each of the four statewide elections held between 1978 and 1983, none qualified for the general election ballot. In 1984 one of four minor party candidates nominated qualified for the general election ballot.

There is some indication that Washington's legislature simply underestimated the adverse impact of the statutory revision upon minor party access to the general election ballot. While the legislation was under consideration, the Office of the Secretary of State addressed a memorandum to the legislators stating that if the proposed legislation had been applicable to the 1976 special election, eight of the twelve parties and fifty of the sixty-five non-presidential candidates in that election would have qualified for the general election ballot. Contrary to this prediction, minor party candidates have been substantially eliminated from Washington's general election ballot.

■ Washington argues that three "independent" candidates qualified for the general election ballot during this period. But an election scheme that operates to exclude minor parties from the ballot is not acceptable merely because it permits independent candidates access to the ballot. "[T]he political party and the independent candidate approaches to political activity are entirely different and neither is a satisfactory substitute for the other." *Storer v. Brown,* 415 U.S. 724, 745, 94 S.Ct. 1274, 1286, 39 L.Ed.2d 714 (1974).

Washington argues there is no significant difference between independent and minority party candidates in Washington because Washington's single "blanket" primary includes all parties and candidates, and a voter may vote for candidates from different parties for different offices. But the mere fact that the cost of voting for a minor party candidate in Washington is less than it is in states having restricted primaries, does not refute plaintiffs' demonstration that Washington has substantially barred minor parties from the general election ballot.

■ Washington asserts that voters may express their preference for a minor party candidate by writing-in the candidate's name on the general election ballot. The Washington statute appears to forbid voters from writing-in the name of a minor party candidate who has failed to qualify for a place on the ballot. *See* Wash.Rev. Code § 29.51.170. In any event, the possibility of writing-in a minor candidate "is not an adequate substitute for having the candidate's name appear on the printed ballot." *Anderson,* 460 U.S. at 799 n. 26, 103 S.Ct. at 1575 n. 26. *See also Lubin v. Panish,* 415 U.S. 709, 719 n. 5, 94 S.Ct. 1315, 1321 n. 5, 39 L.Ed.2d 702 (1974).

Washington points to several features of the 1977 revision that arguably benefitted minor parties. Prior to the revision, the statute required minor parties to hold their conventions on the same day as the major party primary, forcing voters to choose between them; under the revision, minor party conventions precede the primary and, as noted earlier, primary voters may vote for a minor party candidate for an office without forgoing the opportunity to vote for candidates of other parties for other offices. In addition, Washington contends, the requirement that minor parties participate in the "blanket" primary improves the opportunity of minor party candidates to appear in candidate forums and otherwise gain public attention. These benefits are insubstantial in the face of the undisputed evidence that the revision as a whole substantially forecloses minor parties from the general election ballot. Moreover, the state does not argue the benefits it extols could not be achieved by less restrictive means.

### III.

■ We turn to an evaluation of the interests offered by the State as justification for the burden imposed by section 29.-18.110 upon minor party access to the general election ballot and "the extent to which those interests make it necessary to burden the plaintiff's rights." *Anderson*, 460 U.S. at 789, 103 S.Ct. at 1570.

Washington relies primarily upon two interests to justify section 29.18.110: (1) "it ensures that candidates on the general ballot have sufficient community support"; (2) "it helps prevent voter confusion." These are not independent interests. A state may not require a preliminary showing of voter support as an end in itself. Denying ballot access is permissible only if and to the extent that it is necessary as a means to further other legitimate state interests, including avoidance of the voter confusion that may result from the presence on the ballot of too many or frivolous candidates. *Anderson*, 460 U.S. at 788 n. 9, 103 S.Ct. at 1570 n. 9, and cases cited.

■ Washington's political history evidences no voter confusion from ballot overcrowding. In the 20 gubernatorial elections in this century prior to the passage of the challenged statute, an average of 4.75 candidates appeared on each general election ballot. The trend was downward: in the first 10 elections the average number of candidates was 5.3; in the last 10 the number dropped to 4.2.

No more than eight candidates for the office of Governor have ever appeared on a Washington general election ballot. The number of candidates for other statewide offices was substantially less than the number for Governor in each of the five elections for which detailed returns are included in the record (1968–1976)—no more than four minor parties appeared on the ballot for any statewide position other than governor. *Cf. Williams v. Rhodes*, 393 U.S. 23, 47, 89 S.Ct. 5, 19, 21 L.Ed.2d 24 (1968) (Harlan, J., concurring) ("[T]he presence of eight candidacies cannot be said, in light of experience, to carry a significant danger of voter confusion.").

Washington's argument that the general election ballot might be confusingly overcrowded without the restriction imposed by section 29.18.110 is undercut by the state's tolerance and even encouragement of large numbers of candidates on the primary election ballot, particularly since primary voters may vote for any of the numerous candidates for a particular office regardless of party. The primary ballot for the special election of the United States Senate in 1983 bore the names of 33 office seekers —18 candidates from the Democratic Party, 14 candidates from the Republican Party, and the single nominee of the Socialist Workers Party. Section 29.18.110 did not reduce the clutter of candidates facing voters in the primary. Its only effect was to reduce the number of names on the general ballot from three to two.

It is also significant that Washington's 1977 ballot access law does not apply to the election of the President and Vice-President, which is typically the most crowded contest on the Washington general election ballot.

Even if there were a problem of overcrowding on Washington's general election

ballot, resulting in voter confusion, the remedy adopted by Washington unnecessarily restricts fundamental liberties by "making it virtually impossible for any but the two major parties to achieve ballot positions for their candidates." *Clements*, 457 U.S. at 965, 102 S.Ct. at 2845 (opinion of Rehnquist, J.). *See also Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 185–86, 99 S.Ct. 983, 990–91, 59 L.Ed.2d 230 (1979); *Storer v. Brown*, 415 U.S. at 746, 94 S.Ct. at 1287. Such a draconian remedy was not required to protect Washington's general election ballot from overcrowding. Indeed, we can think of no state interest, and the authorities suggest none, that would necessitate the virtually complete exclusion of serious-minded minor parties seeking access to the ballot.

Washington relies upon *Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971), sustaining a requirement that independent candidates seeking a place on Georgia's general election ballot secure nominating petition signatures of 5% of the registered voters in the last election for the office in question; and upon *American Party of Texas v. White*, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974), sustaining a 1% petition requirement imposed by Texas law. Both decisions are distinguishable.

Both *Jenness* and *American Party of Texas* involved petition requirements. Washington's primary vote requirement is more difficult to meet, for two reasons. First, the focus of the primary is usually upon contested races between candidates for the nominations of the major parties, making it more difficult for the already nominated minor party office seeker to attract voter attention. More important, a primary vote system for measuring required public support for a minor party nominee has the inherent effect of establishing a relatively early deadline, preventing independent-minded voters who might be attracted to a minor party nominee from basing their choice on significant events as they develop in the course of a campaign. *See Williams*, 393 U.S. at 33, 89 S.Ct. at 11; *Anderson*, 460 U.S. at 796–805, 103 S.Ct. at 1573–1578; *McLain v. Meier*, 637 F.2d 1159, 1164 (8th Cir.1980).

In addition, the burden of *Jenness*'s 5% requirement was ameliorated by the fact that "Georgia imposes no suffocating restrictions whatever upon the free circulation of nominating petitions." *Jenness*, 403 U.S. at 438, 91 S.Ct. at 1974. Thus any registered voter could sign a petition; he could do so even if he had signed one or more petitions on behalf of other candidates, or had participated, or later did participate, in the primary of another party. *Id.* at 438–39, 91 S.Ct. at 1974–75. Similar flexibility was afforded by the statute involved in *American Party of Texas*. As the eighth circuit pointed out, under Texas' statute "new parties are entitled to compete before the primary, to count signatures at a party convention on primary day and to make up any shortage in signatures for fifty-five days after the primary...." *McLain*, 637 F.2d at 1164. Under the Washington statute, in contrast, a greater degree of support must be shown because support may be drawn only from the limited group actually voting in the primary election, excluding potential support from the 40% of the electorate that registers but does not vote.

Only Washington employs the primary device to screen minor party candidates from the general ballot. A Michigan statute similar in terms and exclusionary impact was held unconstitutional in *Socialist Workers Party v. Secretary of State*, 412 Mich. 571, 317 N.W.2d 1 (1982). The Supreme Court's earlier summary affirmance of a 3-judge district court decision to the contrary, *see Hudler v. Austin*, 419 F.Supp. 1002 (E.D.Mich.1976), *aff'd sub nom. Allen v. Austin*, 430 U.S. 924, 97 S.Ct. 1541, 51 L.Ed.2d 769 (1977), dealt only with the facial constitutionality of the new Michigan procedures before any election had been conducted. The Michigan Supreme Court's subsequent decision held the statute unconstitutional as applied in light of the exclusion of minor parties from the general ballot in two subsequent elections. *See Socialist Workers Party*, 317 N.W.2d at 4–6.

### IV.

The question is not whether the new Washington election law has advantages the old law did not. Instead, it is whether the present law deprives minor parties of a reasonable chance to place candidates on the ballot, and thus deprives citizens of Washington of the opportunity to organize, campaign, and vote outside the framework of the dominant political parties. The record before us demonstrates that Washington's ballot access law seriously impinges upon these protected rights. Washington has failed to present an interest substantial enough to warrant the restraint imposed on those rights. We conclude section 29.18.110 is unconstitutional as applied to statewide electoral contests.

We reverse the grant of summary judgment for Washington, and direct the district court to enter summary judgment for the Socialist Workers Party and other appellants.

REVERSED.